| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------- X<br>AZHER HUSSAIN,<br><br>                         Plaintiff,<br><br>      - against -<br><br>PAKISTAN INTERNATIONAL AIRLINES CORP.,<br><br>                        Defendant.<br>------------------------------------------------------------- X | **NOT FOR PUBLICATION**<br><br><br>**MEMORANDUM & ORDER**<br><br><br>No. 11-CV-932 (ERK) (VVP) |

KORMAN, J.:

      Plaintiff Azher Hussain filed suit against Pakistan International Airlines ("PIA") in the New York State Supreme Court for the County of Queens on January 18, 2011, seeking recovery for unpaid wages. He asserted five causes of action: 1) violations of the New York Labor Law, most significantly PIA's failure to pay overtime; 2) breach of contract; 3) quantum meruit; 4) unjust enrichment; and 5) imposition of a constructive trust. PIA removed the action to this court on February 25, 2011 pursuant to 21 U.S.C. § 1441(d), which grants federal jurisdiction to suits brought against foreign states and "instrumentalities" of foreign states; these suits are tried by the appropriate federal court without a jury. Because the government of Pakistan holds a majority ownership interest in PIA, PIA qualifies as an instrumentality of Pakistan under 28 U.S.C. § 1603(b).

      After the completion of discovery, Hussain moved for summary judgment on May 15, 2012 on his first through fourth causes of action.

## FACTS

      Hussain was employed by PIA for a number of years, from 1987 until 2010. [Pl. R. 56.1 Stmt. ¶ 1, Def. R. 56.1 Stmt. ¶ 1.] For most of his time with PIA, Hussain worked in Pakistan; however, from November 2003 until May 2007, Hussain was assigned by PIA to work as a chef

1

preparing meals in New York for PIA's international flights departing from John F. Kennedy Airport. [Pl. R. 56.1 Stmt. ¶ 2, Def. R. 56.1 Stmt. ¶ 2.] Hussain worked at the facilities of LSG SkyChefs, the catering company that provided meals for PIA's international flights from JFK Airport. [Pl. R. 56.1 Stmt. ¶ 5, Def. R. 56.1 Stmt. ¶ 5.] When Hussain began this posting in New York, he worked alongside another chef; LSG SkyChefs paid PIA $4,000 per month for the services of the two chefs. PIA, in turn, paid Hussain and the other chef each $2,000 per month. Hussain worked approximately eight hours a day alongside PIA's other chef. [Pl. R. 56.1 Stmt. ¶ 8, Def. R. 56.1 Stmt. ¶ 8.]

In February 2005, the second chef employed by PIA to prepare its meals at JFK left the position. [Pl. R. 56.1 Stmt. ¶ 15, Def. R. 56.1 Stmt. ¶ 15.] Hussain testified in his deposition that his former coworker was asked to leave because of excessive drinking and mistakes on the job. [Hussain Dep., Pl. Ex. 3, at 157:25-158:24.] For approximately nine months, Hussain worked alone to prepare all of the meals for PIA's international flights from JFK until a new chef was sent to work in New York in November 2005. [Pl. R. 56.1 Stmt. ¶ 19, Def. R. 56.1 Stmt. ¶ 18.] Hussain continued to be paid a fixed sum of $2,000 per month by PIA throughout this time. [Pl. R. 56.1 Stmt. ¶ 14, 21, Def. R. 56.1 Stmt. ¶ 14, 20.] PIA, however, continued to receive $4,000 per month from LSG SkyChefs. [*Id.*]

Hussain claims that, during the time he cooked alone for PIA's international flights, he worked 12-18 hours a day to make up the work of the second chef. [Pl. R. 56.1 Stmt. ¶ 20.] He further claims that his manager at PIA agreed to pay him the entire $4,000 per month that PIA received from SkyChefs, LSG, in exchange for Hussain's taking on the work of the second chef previously employed by PIA. [Pl. R. 56.1 Stmt. ¶ 17.] On May 22, 2005, PIA's regional finance manager submitted paperwork requesting approval to increase Hussain's compensation to $4,000

per month "till the arrival of a new cook." [Pl. R. 56.1 Stmt. ¶¶ 24, 25, Def. R. 56.1 Stmt. ¶¶ 23-25.]  It is not clear whether this request was denied or otherwise disregarded by PIA management, but Hussain never received additional compensation from PIA during the months he worked alone.  [Pl. R. 56.1 Stmt. ¶ 21, Def. R. 56.1 Stmt. ¶ 20.]  PIA disputes both Hussain's account of his workload and the existence of an agreement to pay him any additional compensation.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Hussain asserts that PIA failed to fairly compensate him during the 9-month period in which he alone prepared all the meals for PIA's JFK flights.  He advances a number of legal theories: PIA's violation of New York Labor Law ("NYLL") § 190, *et seq.*, breach of contract, quantum meruit, and unjust enrichment.  Recovery under any of these theories, however, depends upon the resolution of at least one of two significant factual issues: how much Hussain actually worked during the 9-month period during which he alone prepared all meals for PIA's JFK flights and whether PIA or its representatives ever agreed to pay him an additional $2,000

monthly. Both issues are hotly disputed by the parties, and neither issue is amenable to resolution on summary judgment.

   1. **New York Labor Law Claims**

To state a claim for unpaid wages under the NYLL, the employee has the initial burden of demonstrating that he was not paid the wages to which he was entitled. In situations such as the present case, in which the employer has failed to keep records of employee payment and working conditions, the employee need only present evidence sufficient to infer a violation. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 331-32 (S.D.N.Y. 2005). Hussain has met this burden through the allegations in his complaint and his deposition testimony, in which he asserts he regularly worked 12-18 hour days during the nine months he spent as the sole chef for PIA's flights from JFK airport. His argument is further buttressed by the reasonable inference that his daily hours must have increased somewhat when he took on the full workload of PIA's other chef after the other chef's departure. Given that both sides agree that Hussain worked eight-hour days on average before his coworker's departure, it is reasonable to conclude that his daily average may have crept closer to 12-16 hours when working alone.

For its part, PIA relies upon testimony from its current JFK chef, Mr. Choudhry, and his supervisor at LSG SkyChefs, Selatin Mujezic. Choudhry, who currently prepares all meals for PIA's international flights from JFK airport alone, testified that he usually works 40-42 hours a week, or approximately eight hours per day. [Choudhry Dep., Def. Ex. A, at 7:15-25.] Mujezic also opined that Hussain's duties would have required no more than 45 hours per week. [Mujezic Dep., Pl. Ex. 6, at 13:17-22.] PIA concludes that Hussain could not plausibly have spent twice as much time as Choudhry on the same job. Hussain naturally challenges the validity of the comparison with Choudhry's work schedule, arguing that PIA currently schedules

fewer flights out of JFK and that the circumstances of the job may have changed in the intervening years. To the extent Hussain's complaints are valid, they represent yet another factual dispute that is not suitable for resolution on summary judgment. Hussain's arguments also cut against the prevailing rule of interpretation for summary judgment motions—that the court must draw all inferences against Hussain as the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). It is possible, for instance, that Hussain's workload did not increase significantly after the departure of his coworker in February 2005 in light of the fact that Hussain's coworker was asked to leave by LSG SkyChefs because of his deficient performance. Thus, while Hussain's assertions about the increase in his workload after the departure of the second chef appear plausible, PIA has presented information sufficient to create a genuine dispute of material fact as to Hussain's work schedule between February and October 2005.

PIA does not dispute other technical violations of the NYLL alleged by Hussain—in particular, its failure to pay Hussain "at least semi-monthly" as required by NYLL § 191(1)(a)(i) and its failure to maintain proper records regarding Hussain's compensation and work conditions as required by NYLL § 195. However, Hussain's recovery in this case hinges on his unpaid wages claim under the damages provisions of NYLL § 198(1-a), which provides that successful plaintiffs may recover any underpayment of wages along with reasonable attorneys' fees, prejudgment interest, and liquidated damages of 100% of the underpaid wages unless the employer can prove its underpayment was made in good faith. The NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment and record-keeping. As Hussain has failed to meet the burden for summary judgment on his claim for unpaid wages, he is not entitled to recover under the NYLL at this stage.

5

**2. Breach of Contract Claim**

Hussain also moves for summary judgment on his breach of contract claim, arguing that he and PIA entered into an enforceable contract under which PIA was obligated to pay Hussain an additional $2,000 per month until a second chef could be brought in. To support this claim, Hussain points to an internal PIA communication, dated May 22, 2005, sent by PIA's regional finance manager regarding a pay increase for Mr. Hussain. The letter reads: "Mr. Azhar Hussain has requested that he may be given $4000.00 per month instead of $2000.00 per month from February 2005 till the arrival of second cook from Pakistan… Approval is requested to… Payment [sic] of $4,000.00 per month to Mr. Azher Hussain till the arrival of new cook." [Pl. Ex. 1, Pl. R. 56.1 Stmt. ¶ 25.] It is clear that this document cannot itself be construed as a binding contract; Hussain was not a party to the communication. Nor does the letter memorialize any existing agreement between Hussain and PIA management; by its own terms, it is merely seeking approval to modify the terms of Hussain's employment. While it is possible that Hussain and his supervisor may have come to an oral agreement on the pay increase, PIA hotly disputes the existence of any such agreement and its intent to enter into one. [*See* Def. R. 56.1 Stmt ¶¶ 25, 27.]

Hussain also argues that LSG SkyChefs continued to pay PIA $4,000 per month during the months in which Hussain worked alone on the condition that PIA would pay the entire sum to Hussain. While that might have been LSG SkyChef's expectation, Hussain has not presented evidence to support a formal agreement of this nature, and PIA disputes that such an agreement ever existed. I cannot grant summary judgment on Hussain's contract claim when the determination of the mere existence of an enforceable contract—whether in the form of an agreement between PIA and Hussain or an agreement between PIA and LSG SkyChefs with

respect to which Hussain is a third party beneficiary—requires the resolution of factual disputes. *See Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 400 (1977) ("While it is the responsibility of the court to interpret written instruments, where a finding of whether an intent to contract is dependent… on other evidence from which differing inferences may be drawn, a question of fact arises." (citations omitted)); *see also Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546 (2d Cir. 1989).

### 3. Quantum Meruit and Unjust Enrichment Claims

Hussain also argues that he is entitled to recover under the quasi-contract claims of quantum meruit and unjust enrichment. These claims may be analyzed "together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). *See also Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991) ("[U]njust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract."), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992). Plaintiff's quasi-contract claims, however, are no more amenable to resolution on summary judgment than his statutory and contract claims.

Recovery on a quantum meruit theory requires that the plaintiff demonstrate "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994) (*quoting Bauman Assocs., Inc. v. H & M Int'l Transp., Inc.*, 567 N.Y.S.2d 404, 408 (1st Dep't 1983)). As discussed above, the parties disagree on the nature and extent of the services Hussain performed between February and November 2005, in particular the number of hours Hussain worked on

7

average during those months. They also dispute the validity of Hussain's expectation of additional compensation. While it is undisputed that Hussain continued to perform cooking services for PIA, and that PIA continued to accept his performance, these facts alone do not entitle Hussain to recovery under any of the legal theories he advances. Summary judgment is inappropriate in these circumstances.

## CONCLUSION

Because Hussain's claims hinge on disputed issues of material fact, his motion for summary judgment on his first through fourth claims is denied.

SO ORDERED.

Brooklyn, New York
October 23, 2012

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge